# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: **25mj0040** |
|---|---|
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF** |
| v. | |
| BAILEY A. SZRAMOWSKI, | Title 21, U.S.C., Sec. 841(a)(l) and (b)(1)(C) – Distribution of Fentanyl Resulting in Death |
| Defendant. | |

The undersigned complainant, being duly sworn, states:

On or about December 30, 2022, within the Southern District of California, defendant BAILEY A. SZRAMOWSKI did knowingly and intentionally distribute a mixture and substance containing a detectable amount of amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II Controlled Substance, which resulted in the death of another person, to wit: A.N.; in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

//

//

1    The complainant further states that this complaint is based on the attached Probable

2   Cause Statement, which is incorporated herein by reference.

3

4

Steven R. Merklein
5                                              HSI Special Agent

6    Sworn and attested to under oath by telephone, in accordance with Federal Rule of

7   Criminal Procedure 4.1, this 6th day of January 2025.

8

9

HON. KAREN S. CRAWFORD
10                                             UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Statement of Probable Cause

2        I, Steven R. Merklein, being duly sworn, declare and state as follows:

3        1.      During the course of my duties, I have learned the following information from
4   personal observation, reports prepared by other law enforcement agents and officers, and
5   conversations with witnesses. Because this probable cause statement is being presented for
6   the limited purpose of obtaining a criminal complaint, I have not included each and every
7   fact made known to me during the course of this investigation. Rather, I am only including
8   those facts which I believe are necessary for the issuance of a criminal complaint.

9        2.      On January 3, 2023, A.N., a Sailor onboard the USS Abraham Lincoln, died
10  of an apparent drug overdose. At the time of his death, A.N. was on leave and staying in
11  an RV parked outside his aunt and uncle's house in San Leandro, California. San Leandro
12  Police Department (SLPD) officials searched the RV afterward and found evidence of drug
13  use—specifically, a rolled-up dollar bill that had a white substance fall out when
14  investigators handled it. The substance was not tested, and no other substances were seized
15  from the vehicle. A toxicology report indicated that A.N.'s femoral blood tested positive
16  for the presence of THC and fentanyl. A.N.'s autopsy report concluded he died of "acute
17  fentanyl intoxication."

18       3.      Ten days after A.N.'s death, a second Sailor stationed onboard the USS
19  Abraham Lincoln, C.L., was transported to the hospital after an apparent drug overdose.
20  Before being transported, C.L. was administered NARCAN nasal spray, a prescription
21  medicine commonly used to treat opiate overdose emergencies, including acute fentanyl
22  intoxication. C.L. survived the overdose and remained in the hospital under observation
23  until January 17, 2023. The day after his release, C.L. agreed to cooperate with an NCIS
24  investigation of drug distribution activities on the USS Abraham Lincoln and the
25  circumstances of A.N.'s death. C.L. identified A.N. and another US Navy servicemember,
26  Bailey A. SZRAMOWSKI, as individuals who had been actively selling Percocet pills
27  (likely counterfeit M30 pills) to other sailors, including himself, for approximately the prior
28  year.

4.      C.L. claimed to have purchased pills from SZRAMOWSKI approximately 10 times during the USS Abraham Lincoln's 2022 deployment and an additional four times after the ship returned to San Diego, California, including on January 13, 2023, the day of his overdose. According to C.L., SZRAMOWSKI sourced the pills—described as small, blue pills with the number "30" inscribed on them—via the mail (USPS) and received them at a P.O. box in Coronado, California. C.L. and other sailors would pay SZRAMOWSKI for the pills via CashApp. C.L. reported that, on the day of his first NCIS interview (January 18, 2023), he participated in a three-way call via Instagram with SZRAMOWSKI and his spouse, J.P. During the call, SZRAMOWSKI instructed C.L. to lie to law enforcement by stating he obtained the pills in question from A.N. rather than SZRAMOWSKI.

5.      On February 1, 2023, NCIS agents interviewed L.P. and K.P., A.N.'s aunt and uncle who were the first witnesses to his death in the RV outside their house a month earlier. They reported that, after the incident, SZRAMOWSKI told them via telephone to delete the messages on A.N.'s phone between himself and A.N., but they declined to do so. According to L.P. and K.P., SZRAMOWSKI further stated that he "might go down for murder" or it would "ruin his future" or words to that effect if the police found the messages.

6.      On February 7, 2023, NCIS agents interviewed G.G., the former fiancé of A.N. She said that SZRAMOWSKI would order Percocet pills online and have them delivered to a P.O. Box at a Postal Annex in Coronado, California. He would then sell the pills to A.N. and other sailors for profit and would also use them recreationally. G.G. stated that she personally witnessed A.N. and SZRAMOWSKI abuse drugs, including Percocet pills, which they would ingest orally or snort in crushed form. She also was aware that A.N. regularly used cocaine, and she witnessed SZRAMOWSKI selling cocaine on one occasion via Facetime. G.G. reported that she traveled with A.N. to his family home in Northern California on December 30, 2022. On the drive, she observed that A.N. had a small bag of 10 "Percocet" pills he claimed to have sourced from SZRAMOWSKI for $100. According to G.G., after A.N.'s death, she went through his belongings and found

2

the pills but there were only nine left, implying that he consumed one of the pills before his death. G.G. further reported that she spoke with SZRAMOWSKI over the phone just after A.N.'s body was discovered, and SZRAMOWSKI told G.G. to administer NARCAN to A.N. In a subsequent call after G.G. took possession of A.N.'s phone, SZRAMOWSKI reportedly asked her to delete the text messages between him and A.N., claiming that otherwise "he would go down for murder," or words to that effect. G.G. reported that in another phone call, SZRAMOWSKI's spouse, J.P., told her that the pills SZRAMOWSKI provided to A.N. were laced with fentanyl and the pills he provided C.L. were from the same batch. In a subsequent interview, G.G. reported that, on February 27, 2023, SZRAMOWSKI admitted to her in person that he gave A.N. the fentanyl-laced pills that caused his death, but he claimed, "it wasn't [his] fault" because he "told [A.N.] the pills were different," implying that A.N. had fair warning of the lethal nature of the pills he had purchased from SZRAMOWSKI.

7.    As part of its investigation, NCIS performed a forensic extraction and examination of A.N.'s cell phone. The examination revealed that from September through December 2022, SZRAMOWSKI and A.N. regularly discussed drug use and drug sales— including "perc[s]," "coca," "coke," "blow," "vics," "hydrocodone," "lsd," "shrooms," and "ecstasy." They also occasionally filmed themselves using drugs. During a review of A.N.'s CashApp account records, NCIS agents discovered a $100 payment from A.N. to SZRAMOWSKI on December 30, 2022. On January 3, 2023, the day of A.N.'s death, SZRAMOWSKI texted G.G. and instructed her to "[g]et [A.N.'s] phone" and "delete mine and his msgs" so that law enforcement would not find them, which he claimed would result in SZRAMOWSKI "go[ing] to prison" and "go[ing] down for murder."

8.    Based on the facts of this investigation, I believe there is probable cause to believe that SZRAMOWSKI violated 21 U.S.C. §§ 841(a)(l), (b)(1)(C) – Distribution of Fentanyl Resulting in Death.

3